**TEXAS FARM PRODUCTS COMPANY,**
**Appellant,**

v.

**Aron WILLIAMS, Appellee.**

**No. 191.**

Court of Civil Appeals of Texas.

Tyler.

July 21, 1966.

Rehearing Denied Sept. 22, 1966.

Charles R. Cravens, Jr., Carrington, Johnson & Stephens, Dallas, S. M. Adams, Jr., Nacogdoches, for appellant.

Benton Musslewhite, Musslewhite & Musslewhite, Lufkin, for appellee.

DUNAGAN, Chief Justice.

This suit was instituted by appellee, Aron Williams, against appellant, Texas Farm Products Company, in the District Court of Nacogdoches County, Texas, seeking under the Fair Labor Standards Act of 1938 (Title 29, Sec. 207 et seq.) certain sums allegedly due from appellant for overtime hours worked by appellee. In addition to the amount of overtime pay claimed, appellee sought a like amount as liquidated damages and attorney's fees as authorized by the Act. Appellant defended the action principally upon the grounds that the employee classification of appellee was such that he fell within the provisions of Sec. 213(b) (1) of said statute, which specifically exempted appellee from its overtime pay requirements.

The cause was submitted to a jury which found, in answer to special issues, that appellee, Aron Williams, during the periods of time here relevant, (1) had ridden across a state line in a truck owned by appellant, hauling the latter's property in the scope of his employment as a driver's helper; (2) that appellee made such trips across state lines regularly or repeatedly; (3) that appellee, as an employee for appellant, had performed work of loading appellant's goods and products onto a conveyor belt which carried such goods and products directly into appellant's truck or trailer for transportation across state lines; (4) that appellee, as such employee, performed such work regularly and repeatedly; (6) that appellant transports property repeatedly across state lines and that (7) appellee was required in his employment by appellant to cross state lines on a regular and re-occurring basis; (8) that appellee, as such employee, had engaged in the following activities for appellant: (a) directing a driver backing into loading docks and (h) loading trucks, but in effect the jury further found (9) that such activities did not substantially affect the safety of the operation of the vehicle. The jury also in effect found (10) that appellant had not acted in good faith in failing to pay appellee overtime pay and that (11) appellant did not have reasonable grounds for believing that its refusal to pay such overtime pay was not a violation of the Act and found that (12) the sum of $750.00 was a reasonable attorney's fee for legal services rendered in the case by appellee's attorney.

Shortly after appellee had rested his case, appellant presented its Motion for Instructed Verdict upon the grounds that, as a matter of law, the evidence conclusively showed that appellee was an "exempted" employee within the terms of Sec. 213(b) (1) of the Fair Labor Standards Act and that appellant had not violated it. Appellant's motion was overruled and, before judgment was entered upon the verdict, appellant, by its Motion for Judgment Non Obstante Veredicto, moved the court to enter judgment for it upon substantially the same grounds it had urged in its Motion for Instructed Verdict. After due notice and a hearing thereon, the trial court overruled appellant's motion and entered judgment for appellee for the sum of $548.-49, which sum was established as being the correct amount of overtime pay due if appellee was subject to the Act, a like amount as liquidated damages under Sec. 216, and the additional sum of attorney's fees as found by the jury. Appellant's Motion for New Trial having been overruled, this appeal has been timely perfected.

By its first Point of Error appellant contends that the trial court erred in refusing to hold that appellee was an "exempt" employee under Sec. 213(b) (1) of the Fair Labor Standards Act; and by its second Point of Error appellant asserts that the trial court erred in awarding to appellee liquidated damages because it was conclusively established that its refusal to pay overtime wages was in good faith and upon a reasonable belief that it was not in violation of the Act. In view of the disposition we make of the case, it will be unnecessary to discuss the second Point of Error.

The primary and, as we view it, the crucial point to be decided is whether appellee was an "exempt" employee under the Act thereby relieving appellant of the obligation to pay him the overtime rate as provided in Section 207 aforesaid.

In order to clearly understand appellant's contentions herein, it is deemed necessary to briefly review the statutes involved.

In 1935 the Motor Carrier Act (49 U.S.C.A., Sec. 301–327) was passed by Congress. The Congressional intent in passage of this legislation was to promote the safety of interstate carriers and the Motor Carrier Act gave the Interstate Commerce Commission the power to establish reasonable regulations with respect to the qualifications and maximum hours of

service of certain employees and safety of operations and equipment.[1]

In 1938 Congress passed the Fair Labor Standards Act, under which this suit is brought, and provided thereby for the rates of pay for employees doing overtime work as defined therein.[2]

Sec. 13(b) (1), 29 U.S.C.A., Sec. 213 (b) (1) of the Fair Labor Standards Act created the exemption which forms the basis of appellant's defense herein. This Section specifically provided that the provisions of Sec. 207 of said Act did not apply with respect to:

"(1) any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 304 of Title 49; * * * (Sec. 204 of the Motor Carrier Act, 1935)."

In 1941 the Interstate Commerece Commission, pursuant to the authority extended it under the Motor Carrier Act, promulgated an order in which it defined those classifications of employees of Interstate Motor Carriers, other than truck drivers, over which it had jurisdiction. Ex parte No. MC–2, In the Matter of Maximum Hours of Service of Motor Carrier Employees, 28 MCC 125 (1941). The Commission determined that drivers' "helpers," as defined by it, did affect the safety of operation of vehicles and therefore such drivers' "helpers" were within the Commission's jurisdiction and, accordingly, were excluded from the benefits of Section 207 of the Fair Labor Standards Act.[3]

---

1. Sec. 304 of the Motor Carrier Act reads in part as follows:

"(a) It shall be the duty of the Commission—

"(1) To regulate common carriers by motor vehicle as provided in this chapter, and to that end the Commission may establish reasonable requirements with respect to continuous and adequate service, transportation of baggage and express, uniform systems of accounts, records, and reports, preservation of records, qualifications and maximum hours of service of employees, and safety of operation and equipment.

"(2) To regulate contract carriers by motor vehicle as provided in this chapter, and to that end the Commission may establish reasonable requirements with respect to uniform systems of accounts, records, and reports, preservation of records, qualifications and maximum hours of service of employees, and safety of operation and equipment.

"(3) To establish for private carriers of property by motor vehicle, if need therefor is found, reasonable requirements to promote safety of operation, and to that end prescribe qualifications and maximum hours of service of employees, and standards of equipment. * * *"

2. "(a) (1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed; * * *"

3. "(4) *Helpers.*—The great majority of trucks are operated by a driver alone. Some carriers employ a driver and an assistant who drives part of the time and helps in loading and unloading. Both are drivers and subject to our jurisdiction. In certain sections of the country, however, carriers employ men known as helpers who ride on the vehicle, but do not drive. These helpers not only assist in loading and unloading the vehicle but perform many duties which aid in the safe operation of the motor vehicle. The helpers dismount when the vehicle approaches a railroad crossing, and flag the driver across the railroad tracks. They perform a similar duty when the motor vehicle is being turned around on a busy highway or when it is entering or emerging from a driveway. In the case of a break-down the helper places the flags, flares, and fuses as required by our safety regulations. The presence of a helper in the case of a break-down or an accident makes it possible for one man to go for assistance without leaving the truck unprotected on the highway. Tire trouble is not as frequent as formerly, but punctures do occur. The helper is, of course, of great assistance to the driver in changing tires, putting on or removing

The Commission further in the Order aforesaid entered as a finding of fact and conclusion of law the following:

"*Findings of fact.*— * * * 3. That helpers employed by common and contract carriers and private carriers of property by motor vehicle subject to part II of the Interstate Commerce Act devote a *substantial part of their time to activities which directly affect the safety of operation of motor vehicles* in interstate or foreign commerce. We further *find that the term 'helpers' as used herein includes all employees, other than the drivers, who are required to ride on a motor vehicle when it is being operated in interstate or foreign commerce.*

"*Conclusions of law.*— * * * 3. That we have power, under section 204 (a) of said part II (the Motor Carrier Act of 1935), to establish qualifications and maximum hours of service for the classes of employees covered by findings of fact numbered * * * 3 above, * * *"

Appellee contends that he was hired by appellant and worked as a "swamper;" that he was required to accompany the truck driver for the sole purpose of unloading the truck or trailer upon reaching its destination and that he was not required to perform any duties or activities which were of a "safety-affecting" nature and, therefore, the Interstate Commerce Commission acquired no jurisdiction under Section 213(b) (1) of the Act to establish qualifications and maximum hours of service for such an employee. He therefore asserts that he was not an "exempt" employee within the meaning of the Act. Moreover, appellee points out that the jury, in answer to Special Issue 8, Sections (b) through (g), failed to find that appellee, during his employment with appellant, had directed a driver pulling away from loading docks; or had directed a driver onto highways or at railroad intersections or had changed tires, set up flares, or fixed flats. Appellee contends therefore that it was within the province of the trier of the facts to determine whether appellee's activities "affected the safety of operation" and, unless there is a factual determination in the trial court that his activities did so affect the safety of operations, the appellee did not fall within the exemption provisions of Sec. 213(b) (1) of the Fair Labor Standards Act. Appellant contends that the Interstate Commerce Commission has already determined that certain *classes of work* set forth in 28 MCC 125, such as "helpers," directly "affects the safety of operation" of motor vehicles in interstate commerce and it is necessary only to determine whether appellee's activities were such as to fall within the Commission's definition of "helpers." Appellant further contends that the admissions of appellee, to-

chains, and making minor repairs. As *the great majority of trucks are operated* safely with only one man on the vehicle, we cannot say that the presence of a helper is required, nor do our safety regulations so provide. It is clear, however, that the duties performed by a helper aid materially in the safe operation of a motor vehicle, and that they devote substantially all of their time to such work. Ordinarily, no doubt, a helper will be on duty the same number of hours as a driver, and it seems entirely practical and logical that the hours of a helper should be regulated in the same manner as those of the driver. We conclude that helpers devote a substantial part of their time to activities which directly affect the safety of operation of motor vehicles operated in interstate or foreign commerce, and hence that we have power to establish qualifications and maximum hours of service for such employees under said section 204(a).

" * * *

"We believe that it is neither necessary nor practicable to draw fine distinctions between the work done by the various employees who ride on the motor vehicle in other capacities than that of driver. To some extent at least, they all engage in activities which directly affect safety of operation. An attempt to limit our jurisdiction over them in accordance with the degree in which they engage in such activities would create confusion and continual controversy. They will be included in the category of helpers."

gether with the jury findings below, clearly placed him within the jurisdiction of the Interstate Commerce Commission, thereby making applicable the exemption provision of the Fair Labor Standards Act.

■ In an early case defining which employees were to be within the jurisdiction of the Interstate Commerce Commission under Section 204 of the Motor Carrier Act (49 U.S.C.A., Sec. 304(a)), the United States Supreme Court held that the provision was limited to those employees whose activities affected the safety of operation. The court held that the Interstate Commerce Commission had no jurisdiction to regulate the qualifications or hours of service of any others. United States v. American Trucking Associations, 310 U.S. 534, 553, 60 S.Ct. 1059, 84 L.Ed. 1345, 1356 (1940). However, once it is determined that the Commission under Section 13(b) (1) of the Fair Labor Standards Act possesses the *power* to regulate certain employees, all such employes falling within such classifications are exempt *regardless* of whether the Commission has exercised its power to regulate. If any employee falls within the Commission's jurisdiction, he is excluded per se from the benefits of the overtime provisions of Section 207 of the Act. Southland Gasoline Co. v. Bayley, 319 U.S. 44, 63 S.Ct. 917, 87 L.Ed. 1244. Similar regulations and factual determinations of the Interstate Commerce Commission were upheld by the Supreme Court in Levinson v. Spector Motor Service, 330 U.S. 649, 67 S.Ct. 931, 91 L.Ed. 1158 (1947). The employees involved in the cited case were "checkers" or "terminal foremen," a substantial part of whose activities consisted of directing the work of "loaders" of freight for interstate motor carriers. In the cited case, the class of work of "loaders" had been defined by the Commission and it was conceded that at least a part of these employees' activities did not affect the safety of operation of motor carriers. The court held that the Commission had the power under Sec-

tion 13(b) (1) of the Fair Labor Standards Act to classify such activities and that such employees therefore were excluded from the overtime pay provisions of the Act. The court points out that the Commission had found that it had the power to establish qualifications and maximum hours of service for those persons doing the work of "loaders" although the Commission had not found it advisable to establish qualifications and maximum hours of service for that work. The findings of fact of the Commission, the court found, were squarely within the jurisdiction of the Commission and, since the latter had the *power* to make regulations relating to such activities, such employees fell within the exemption provision of the Act. The determination by the Commission that the work of "loaders," *as defined by it,* affected the safety of motor carrier operation was squarely and directly upheld by the Supreme Court. The companion case of Pyramid Motor Freight Corporation v. Ispass, 330 U.S. 695, 698, 67 S.Ct. 954, 91 L.Ed. 1184 (1947), made it clear that it was within the province of the District Court to determine whether the activities of the employee consisted, wholly or in substantial part, of the *class of work* of a "loader" as *defined* by the Interstate Commerce Commission. And in Morris v. McComb, 332 U.S. 422, 68 S.Ct. 131, 92 L.Ed. 44 (1947), the court held that it was the *character* of the activities of the employee and *not* the amount of time actually spent in those activities that determined whether such employees were under the jurisdiction of the Commission.

■ The cases above cited clearly demonstrate that the United States Supreme Court places exclusive reliance upon the determination of the Interstate Commerce Commission and its classification of those jobs which are of a "safety-affecting nature." The principles announced in the above cases have been followed in numerous other decisions, a few of which will be here noted.

Opelika Royal Crown Bottling Company v. Goldberg, 299 F.2d 37 (5th Cir., 1962) is a closely analogous case and involved driver-helpers who rode on beverage distributing trucks driven in interstate commerce. The court noted that the ICC had made an exhaustive report on the type of job which it felt affected the safety of operations of vehicles under its jurisdiction, citing MC–2, 28 MCC 125. The court stated that the ICC had determined it had authority and jurisdiction of "helpers"—employees other than the driver—who rode on vehicles under ICC jurisdiction. The court quoted from the Report of the Commission wherein the latter had stated that it was neither necessary nor practicable to draw fine distinctions between the work done by the various employees who ride on the motor vehicle in other capacities than that of driver. The Commission stated that to some extent at least all engaged in activities which directly affect safety of operation. In holding that these employees fall within the jurisdiction of the ICC and thus were "exempt" employees under the Fair Labor Standards Act, the court states as follows:

> "We feel that this finding by the Commission is determinative, and we therefore conclude that the driver-helpers in this case are exempt from the overtime provisions of the Fair Labor Standards Act by section 13(b) (1) of that Act."

See also Fletcher v. Grinnell Bros., 78 F.Supp. 339 (D.C.1948); Mitchell v. Overnite Transportation Co., D.C., 176 F.Supp. 399 (1959); and Brooks Transportation Co., Inc., et al. v. United States, 93 F.Supp. 517 (D.C.1950).

The findings and conclusions of the Commission relating to "loaders" were sustained also in Mitchell v. Hill & Hill Truck Line, Inc., 183 F.Supp. 463 (D.C.Tex. 1960). It is interesting to note that the court in the last cited case holds that if the employees involved fall within the *Commission's definition* of "loaders," they are exempt under the relevant provisions of the Fair Labor Standards Act. The court states that it is the function of the trial court to determine whether the employees there involved seeking recovery of overtime compensation are engaged in activities coming within the Commission's definition of the work of a "loader."

It is our view in the case at bar that, unless the matter was established as a matter of law, it was the function of the trier of the facts to determine whether appellee's activities fell within the Commission's definition of "helpers" and, if appellee's activities did so fall, he clearly would be an "exempt" employee under Section 213 (b) (1) of the Fair Labor Standards Act aforesaid. The appellee's activities as found by the jury were within the Commission's definition of "helper."

The parties stipulated in the trial below that at all relevant times appellant produced goods for commerce and engaged in commerce within the meaning of the Fair Labor Standards Act of 1938, as amended. Further, the parties agreed that appellant produced either by manufacturing or jobbing, goods which regularly and frequently were shipped in interstate commerce, such goods consisting of feed, fertilizer and associated products. It was further agreed that at all relevant times appellee was an employee of appellant. Upon evidence, the sufficiency of which has not been questioned here, the jury has found in answer to Special Issues 1, 2, 7 and sub-sections (a) and (h) of Special Issue No. 8, that the activities of the appellee were such that he fell within the classification of "helper" as defined by the Commission. Therefore, since the "safety-affecting" nature of a "helper" has been determined by a proper Order of the Interstate Commerce Commission, the trial court is not authorized to upset that determination. The appellee therefore, under the record in this case, falls clearly within the provisions of Section 213(b) (1) of the Fair Labor Standards Act, and ap-

pellant was not obligated to pay the overtime sums for which suit was brought. The trial court erred in so holding and the judgment of the court below is reversed and is here rendered for the appellant.