L & F DISTRIBUTORS, Appellant,

v.

Amador G. CRUZ, Appellee.

No. 13–94–492–CV.

Court of Appeals of Texas,
Corpus Christi.

Dec. 19, 1996.

Rehearing Overruled Feb. 6, 1997.

Ronald G. Hole, Law Offices of Ronald G. Hole, McAllen, Shirley Selz, Gary, Thomasson, Hall & Marks, Corpus Christi, for appellant.

James A. Herrmann, Harlingen, Carter C. White, Yanta, Flores & Korth, Austin, for appellee.

Before DORSEY, FEDERICO G. HINOJOSA, Jr., and RODRIGUEZ, JJ.

## OPINION

RODRIGUEZ, Justice.

This is an appeal from a judgment on a jury verdict in a suit for unpaid overtime and for retaliatory discrimination brought under the federal Fair Labor Standards Act (FLSA). Under four points of error, L & F Distributors complains that the court erred by submitting jury questions regarding discrimination, damages, exemplary damages, and attorney's fees. Amador Cruz brings five cross-points complaining that the court erred by disregarding certain jury findings and by rendering judgment in favor of L & F on the issue of his right to overtime pay under the FLSA. In response to Cruz's cross-points, L & F raises five cross-points of its own regarding Cruz's status as an "executive" or a "loader" under the FLSA, its good faith, and insufficiency of the evidence on damages. We reverse and render judgment in favor of L & F on the retaliatory discrimination claim and in favor of Cruz on his claim for unpaid overtime compensation.

For fourteen years, Cruz worked in the Harlingen warehouse of a beer distributor operated by L & F. Cruz usually worked 50 to 60 hours over a four day workweek. For the two and a half week period during spring break, however, Cruz was required to work long hours seven days a week. When Cruz objected to working on the weekends during spring break, L & F's initial response was to demote Cruz. He was fired the following day. The parties agree that L & F had been paying Cruz a regular amount every week until he was fired, but they dispute whether this payment was a salary or an hourly wage. The parties also agree that Cruz's job title was "warehouse manager," but they disagree as to the amount of supervisory authority this job entailed.

Cruz sued L & F and Henry Williams, an L & F general manager. The court directed a take-nothing verdict in favor of Williams at the close of Cruz's presentation of evidence. Questions were submitted on Cruz's claim for overtime pay and his claim that L & F discriminated against him for complaining about the long hours he was required to work. The court also submitted a jury question regarding fees for Cruz's attorney.

The jury answered all questions in favor of Cruz. In response to L & F's motion for judgment notwithstanding the verdict, the court disregarded the jury's findings concerning the amount of overtime compensation that L & F owed Cruz. As a result, the court rendered a take-nothing judgment on Cruz's claims for overtime compensation but granted judgment in favor of Cruz on the retaliatory discrimination claim. We will address the points relevant to each claim separately.

## I. RETALIATORY DISCRIMINATION

Subject to certain exceptions, an employer cannot require that an employee work for "a

workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half the regular rate at which he is employed." 29 U.S.C.A. § 207(a)(1). An employee's right to enforce these wage and hour protections is safeguarded by an anti-retaliation provision making it unlawful

> to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee[.]

*Id.* § 215(a)(3). By its first point of error, L & F complains that the trial court erred by submitting a jury question on Cruz's retaliatory discrimination claim because Cruz had never engaged in any activity protected by the FLSA.

■ The anti-retaliation provision of the FLSA protects only those employees who assert their statutory rights. *Goldberg v. Bama Mfg. Corp.*, 302 F.2d 152, 154 (5th Cir.1962). Although the FLSA forbids employers from requiring certain employees to work more than 40 hours a week unless the employer pays time and a half for overtime, it neither prohibits employers from requiring employees to work on the weekend nor limits the total hours an employer can require an employee to work during any given week. 29 U.S.C.A. § 207(a)(1).

■ The undisputed evidence in this case shows that Cruz complained about having to work over the weekend in addition to working long hours during the week, but he neither asked for overtime pay nor indicated that he would file a complaint under the FLSA. Because Cruz's complaint to his supervisor did not rest on the assertion of a statutory right, we find no evidence that Cruz engaged in any activity protected by the FLSA. Accordingly, the trial court erred

by submitting the retaliatory discrimination cause of action to the jury. *See Crosbyton Seed Co. v. Mechura Farms*, 875 S.W.2d 353, 364 (Tex.App.—Corpus Christi 1994, no writ). We render judgment that Cruz take nothing on his retaliatory discrimination claim.

## II. CLAIM FOR UNPAID OVERTIME COMPENSATION

■ Cruz's claim for unpaid overtime compensation was submitted to the jury by four questions. Because bona fide executives are not entitled to time and a half pay for overtime, the trial court first asked the jury to resolve this issue. The jury found that Cruz was not a bona fide executive. By its answer to Question 2, the jury found that Cruz should be awarded $19,223.70 for unpaid overtime compensation for the period from September 11, 1990,[1] to March 11, 1992. Because a claimant's right to overtime pay is governed by a three-year statute of limitations if the employer's violation of the FLSA was willful, the court next asked the jury to resolve this issue. The jury found that L & F's failure to pay Cruz overtime compensation was willful. By its answer to Question 4, the jury found that Cruz was entitled to $10,372.50 for the period from September 11, 1989, to September 11, 1990.

In its motion for judgment notwithstanding the verdict, L & F asserted that there was no evidence to support the jury's findings of unpaid compensation under Questions 2 and 4. Specifically, L & F argued that the jury used a method of calculating overtime pay which was improper as a matter of law because Cruz was a fixed salary employee working fluctuating hours. After a hearing, the court disregarded the jury's answers to Questions 2 and 4 and then rendered judgment for L & F on the claim for overtime compensation. By cross-points two and five, Cruz complains that the court erred in disregarding the jury's answers to the compensation questions.

---

1. The starting date of the period for which Cruz sought compensation is established by the fact that he filed suit on September 11, 1992. Causes of action to enforce the FLSA are governed by a two-year statute of limitations unless the employer's violation was willful, in which case the claim must be brought within a three-year limitations period. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132, 108 S.Ct. 1677, 1680–81, 100 L.Ed.2d 115 (1988).

## A. Defective Submission of Questions on Damages

It is undisputed that L & F paid Cruz a regular amount every week and that Cruz's hours fluctuated from week to week. In light of these facts, L & F argues that any award of compensation for unpaid overtime must be calculated by using the formula applied in *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135, 1138–39 (5th Cir.1988). The *Blackmon* formula is $C = (W/H) \times .5 \times (H-40)$. Under this formula, "C" is compensation owed, "W" is the amount of wages paid every week, and "H" is the number of hours worked during the relevant week. However, the questions on unpaid overtime compensation were submitted to the jury as follows:

### QUESTION 2

What amount of money, if any, do you find would compensate Mr. Cruz for unpaid overtime pay during the two year period September 11, 1990, to March 11, 1992?

Answer in dollars and cents, if any.

Answer:_____

. . . .

### QUESTION 4

What amount of money, if any, do you find would compensate Mr. Cruz for unpaid overtime during the one year period September 11, 1989 to September 11, 1990?

Answer in dollars and cents, if any.

Answer:_____

The court's charge to the jury did not include any questions, instructions, or definitions regarding the *Blackmon* method for computing overtime pay.

■ The proper measure of damages for any claim is an issue that should be resolved as a question of law and presented to the jury in the charge. *Jackson v. Fontaine's Clinics, Inc.*, 499 S.W.2d 87, 90 (Tex.1973); *Texas Commerce Bank Reagan v. Lebco Constructors, Inc.*, 865 S.W.2d 68, 75 (Tex. App.—Corpus Christi 1993, writ denied). When the charge misinforms the jury about the substantive law, the parties must either object to the improper submission or accept the wording of the question as submitted. *Allen v. American Nat'l Ins. Co.*, 380 S.W.2d 604, 608–09 (Tex.1964). If a question on damages includes an erroneous measure of damages or some other affirmative misstatement of the law, then an objection preserves the error. *Religious of the Sacred Heart v. City of Houston*, 836 S.W.2d 606, 613–14 (Tex.1992); *Gilgon, Inc. v. Hart*, 893 S.W.2d 562, 566 (Tex.App.—Corpus Christi 1994, writ denied). In certain circumstances, the complaining party may preserve error by tendering a properly worded limiting instruction and requesting the court to include its proposed instruction in the charge. *See, e.g., Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 538 n. 4 (Tex.1981). In this case, L & F neither objected to Question 2 or 4 as submitted nor requested an instruction regarding the *Blackmon* formula. Accordingly, L & F is now bound by the wording of Questions 2 and 4 as submitted. *Allen*, 380 S.W.2d at 609.

## B. Disregarded Jury Findings

■ A court cannot disregard a jury finding unless the issue is immaterial or the finding is unsupported by the evidence. *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex.1994). Questions asking the jury what amount of money would compensate Cruz for unpaid overtime are material to this dispute. The alleged defects in the two questions do not render the compensation issue immaterial. *See id.* Whether the findings are supported by the evidence is resolved under the standard of review for challenges to the legal sufficiency of the evidence. *McAlpin v. Sanchez*, 858 S.W.2d 501, 508 (Tex.App.—Corpus Christi 1993, writ denied). Accordingly, we consider only evidence and inferences supporting the findings and disregard all contrary evidence and inferences. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex.1995); *Cantu v. Butron*, 921 S.W.2d 344, 348 (Tex.App.—Corpus Christi 1996, writ denied). Cruz must show that the record contains more than a scintilla of evidence to support the jury's answers to Questions 2 and 4 in order to establish that the trial court erred by disre-

garding the jury's findings. *See Holloway v. Skinner,* 898 S.W.2d 793, 796 (Tex.1995). There is more than a scintilla of evidence "where the evidence supporting the finding, as a whole, 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *Burroughs Wellcome,* 907 S.W.2d at 499 (quoting *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 25 (Tex. 1994)).

■ By Question 2, the jury was asked how much money would compensate Cruz for unpaid overtime during a 78 week period. The record contains testimony that Cruz may have worked as much as 60 hours a week without even considering that every year Cruz worked much longer hours during spring break. In calculations that Cruz offered to the jury as plaintiff's exhibit two, he requested compensation for 1390 hours in unpaid overtime. This calculation is more than adequately supported by the evidence of 20 hours a week in overtime for 78 weeks. The record in this case also includes a copy of Cruz's pay stub. The stub shows that 40 regular hours amount to 368.80 at a "regular rate" of 9.22. Considering only evidence and inferences supporting the jury's findings, the record contains more than a scintilla of evidence to indicate that Cruz's regular rate of pay was $9.22 an hour. The FLSA indicates that an employee should receive "not less than one and one-half the regular rate at which he is employed" for hours he works in excess of 40 a week. 29 U.S.C.A. § 207(a)(1). If the jury multiplied 1390 hours in unpaid overtime by one and one-half of Cruz's regular rate of $9.22 an hour, then the jury would have awarded $19,223.70 under Question 2. This is the exact answer that the jury provided. Considering evidence and inferences that support the answer to Question 2, the evidence rises past the "level that would enable reasonable and fair-minded people to differ in their conclusions." *Moriel,* 879 S.W.2d at 25. Accordingly, we sustain Cruz's second cross-point.

By Question 4, the jury was asked how much money would compensate Cruz for unpaid overtime compensation during a 52 week period. Cruz testified that he worked between 50 and 60 hours a week during this period. Cruz requested overtime pay for 750 hours, which is a figure supported by his testimony. The evidence regarding his regular rate of pay is the same that we discussed above. If the jury multiplied 750 hours in unpaid overtime by one and one-half of Cruz's regular rate of $9.22 an hour, then the jury would have awarded $10,372.50 under Question 4. This was the jury's answer. Accordingly, we sustain Cruz's fifth cross-point.

Having determined that the trial court erred by disregarding these findings, we must reverse and render judgment on the jury's findings unless L & F's cross-points show grounds for remand. *M.N. Dannenbaum, Inc. v. Brummerhop,* 840 S.W.2d 624, 628 (Tex.App.—Houston [14th Dist.] 1992, writ denied); *see also Navarette v. Temple Indep. Sch. Dist.,* 706 S.W.2d 308, 309–10 (Tex.1986). L & F attempts to raise such grounds by five cross-points.

### C. Factually Sufficient Evidence to Support Compensation

■ In order to determine that the court erred by disregarding the jury's answers to Questions 2 and 4, we concluded that the jury's answers were supported by legally sufficient evidence. L & F also brings a cross-point to challenge the factual sufficiency of the evidence to support these two findings. We sustain a point of error complaining that the evidence is factually insufficient only if the evidence is so weak as to indicate the finding is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986) (per curiam); *Gilgon,* 893 S.W.2d at 570. Review of the record for legally sufficient evidence is limited to evidence and inferences supporting the findings, but a factual sufficiency review is based on all the evidence in the entire record. *Cantu,* 921 S.W.2d at 348; *see also Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex. 1989). Accordingly, we must now consider testimony that L & F offered in opposition to the evidence supporting the jury's answers to Questions 2 and 4. L & F challenges Cruz's evidence on two grounds.

First, L & F attacks the method by which the jury apparently calculated Cruz's overtime compensation. As we discussed above,

however, this should have been resolved as a question of law and presented to the jury in the court's charge. Because the issue does not involve a dispute as to the weight of the evidence, the matter is not amenable to review by an insufficient evidence point.

Second, L & F attacks the probative value of Cruz's pay stub to establish his hourly rate of pay. As we have noted, the pay stub reflects that 40 regular hours amount to $368.80 at a regular rate of $9.22. L & F offered the testimony of a company manager, Greg LaMantia, to explain these figures. LaMantia testified that Cruz was paid the $368.80 a week as salary and that the payroll computer automatically listed 40 hours each week for all salaried employees. LaMantia further explained that the $9.22 listed as Cruz's regular rate of pay was no more than a computer calculation based on the salary divided by 40 hours a week. Although "regular rate" is a term expressly used in the FLSA, LaMantia testified this phrase on Cruz's pay stub "has nothing to do with what Mr. Cruz was getting" paid.

Generally, the jury is "the sole judge of the credibility of the witnesses . . . and may choose to believe all, part, or none of the testimony of any one witness." *Silva v. Enz*, 853 S.W.2d 815, 817 (Tex.App.—Corpus Christi 1993, writ denied). In this case, the jury apparently disbelieved LaMantia's explanation of Cruz's pay stub. In order to sustain the claim of factual insufficiency, we would have to conclude that the evidence supporting the finding is so weak as to indicate the finding is clearly wrong and unjust. *Cain*, 709 S.W.2d at 176. Because L & F has not met this burden, we overrule its claim of factual insufficiency.

### D. Bona Fide Executives Under the FLSA

L & F also challenges the legal and factual sufficiency of the evidence supporting the jury's finding by Question 1 that Cruz was not a bona fide executive. The court's charge contained the following definitions to assist the jury:

"BONA FIDE EXECUTIVE" means any employee: (a) Whose primary duty consists of the management of the enterprise in which he is employed or a customarily recognized department or subdivision thereof; and (b) Who customarily and regularly directs the work of two or more other employees therein; and (c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and (d) Who customarily and regularly exercises discretionary powers; and (e) Who does not devote more than 20 percent of his hours of work in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section.

An employee who is compensated on a salary basis at a rate of not less than $250 per week is deemed to be a bona fide executive if the employee's primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof and includes the customary and regular direction of the work of two or more other employees therein.

L & F's claims of legal and factual insufficiency of the evidence are based on the second of the two paragraphs quoted above. Both parties agree that Cruz made more than $250 a week. As a result, the dispute between the parties concerns whether Cruz's primary duty consisted of managing the warehouse and whether he regularly directed the work of two or more coworkers.

Cruz's testified about his primary duties. At the time he was fired, Cruz's job title was warehouse manager. Although his title had changed during his time with L & F, Cruz explained that his duties had remained the same since he was originally hired as a warehouseman. He would raise the flag in the morning, load and unload the trucks, take inventory of the beer stock, sweep and mop the warehouse, and close the warehouse at night. During Cruz's last years at the warehouse, L & F hired students to assist with the loading in the afternoon. Cruz had some authority over these parttime coworkers, but he testified that the truck drivers were pri-

marily responsible for directing the students as they loaded beer into the trucks.

One of L & F's former truck drivers, Andy Rodriguez, testified about the duties he regularly observed Cruz performing. Rodriguez said that he would often see Cruz in the morning, in the afternoon, and again at the end of the day. Rodriguez confirmed that Cruz was usually busy cleaning the warehouse, taking inventory, or loading the trucks. Rodriguez also corroborated Cruz's testimony that the truck drivers were primarily responsible for directing the students as they loaded the trucks.

L & F's former bookkeeper and inventory manager, Jack Gilpin, also testified about the duties he observed Cruz performing on a regular basis during the 15 years that they both worked for L & F. Gilpin explained that 75 to 90 percent of Cruz's work involved manual labor. Gilpin stated that Cruz occasionally supervised the janitor or the other loaders, but that Cruz also performed the same manual labor tasks as the janitor or loaders. According to Gilpin, loading the trucks did not require that Cruz exercise independent judgment because the drivers made sure their trucks were loaded correctly. Gilpin testified that, in his opinion based on 15 years at L & F, Cruz was not part of the L & F management structure.

L & F offered Cruz's written job description. The warehouse manager's listed responsibilities included taking inventory, rotating the stock, and cleaning and maintaining the warehouse, office, grounds, and trucks. The job description also listed warehousemen, mechanics, and loaders as Cruz's subordinates, but the record contains conflicting evidence of whether Cruz directed these employees on a regular basis. L & F offered further evidence that the stock was worth as much as $1,000,000 at times, and that Cruz's responsibility for rotating the stock required independent discretion. Specifically, Williams testified that proper stock rotation required Cruz to stack the beer according to the brew date to minimize spoilage. Similarly, LaMantia testified that it was very important for Cruz to stack the beer correctly and that Cruz spent "little or no time" on menial tasks.

As we discussed above, the jury is the sole judge of the witnesses' credibility and may believe all, part, or none of a witness's testimony. *Silva*, 853 S.W.2d at 817. In this case, the jury apparently found the testimony of Cruz, Gilpin, and Rodriguez regarding Cruz's primary duties more credible than the testimony of Williams and LaMantia. The finding that Cruz was not a bona fide executive is supported by more than a scintilla of evidence and is neither clearly wrong nor manifestly unjust. After conducting a legal sufficiency review of evidence and inferences supporting the jury's finding and a factual sufficiency review of all the evidence, we overrule L & F's first cross-point.

### E. Loaders Under the FLSA

■ By its second cross-point, L & F contends that Cruz was not entitled to overtime pay because he was an exempt loader under the FLSA and that the court should have submitted this issue to the jury. As an exception to the FLSA, the requirement that employers must pay time and a half for overtime does not apply to

any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 3102 of Title 49.

29 U.S.C.A. § 213(b)(1); *see also Texas Farm Prods. Co. v. Williams*, 406 S.W.2d 256, 259 (Tex.Civ.App.—Tyler 1966, writ ref'd n.r.e.), *cert. denied*, 388 U.S. 911, 87 S.Ct. 2116, 18 L.Ed.2d 1350 (1967). Under section 3102 of Title 49, the Secretary of Transportation may generally prescribe the maximum hours of employees' service when necessary to promote safe motor transportation

between a place in—

(A) a State and a place in another State;

(B) a State and another place in that same State through another State;

(C) the United States and a place in a territory or possession of the United States to the extent the transportation is the United States;

(D) the United States and another place in the United States through a foreign

country to the extent the transportation is the United States; or

(E) the United States and a place in a foreign country to the extent the transportation is the United States[.]

49 U.S.C.A. §§ 3102, 10521. So long as the employee's work affects interstate transportation as defined above, the FLSA exception under section 213(b)(1) applies to loaders of freight because improperly loaded trucks are unsafe. *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 651–52, 67 S.Ct. 931, 933, 91 L.Ed. 1158 (1947). In this case, however, L & F presented no evidence that it designated an interstate destination for any of the trucks loaded by Cruz or any other L & F employee.

■■■■ We generally reverse a judgment when the court fails to submit a properly requested issue on a vital defense that was pleaded and supported by more than a scintilla of evidence. TEX.R. CIV. P. 277, 278; *Exxon v. Perez*, 842 S.W.2d 629, 631 (Tex. 1992) (per curiam); *Gilgon*, 893 S.W.2d at 567. Because L & F failed to offer any evidence that Cruz loaded trucks which L & F sent across state lines, however, the trial court did not err by refusing to submit L & F's loader-exemption defense to the jury. Accordingly, we overrule L & F's second cross-point.

### F. Willful Violation of the FLSA

■■■ L & F next challenges the legal and factual sufficiency of evidence supporting the jury's finding under Question 3 that L & F's violation of the FLSA was willful. The jury was instructed that L & F's conduct should be considered willful if it "either knew or showed reckless disregard for the matter of whether its conduct was prohibited."

It is undisputed that the Department of Labor investigated L & F in 1988 for noncompliance with the FLSA. As a result of this investigation, L & F agreed to pay over $25,000 in back wages for unpaid overtime compensation to 23 employees. For some reason, the Department of Labor neither questioned Cruz during the investigation nor included him among the employees entitled to back pay. Eliseo Villareal was one of the employees who did receive back wages.

Cruz testified that when the Labor Department determined Villareal was entitled to overtime pay, Villareal's job entailed the exact same duties for which Cruz was also responsible. Cruz further testified that his duties had not significantly changed. Andy Rodriguez also testified about the tasks that he observed both Cruz and Villareal executing. Rodriguez said that he saw Cruz and Villareal performing the same jobs. According to Rodriguez, the only difference between Cruz's job and Villareal's job was that Cruz "had more time working with the company."

As evidence that its violation of the FLSA was not willful, L & F offered testimony from LaMantia. He said that the decision to classify Cruz as a salaried worker was based on the 1988 Department of Labor investigation as well as his personal review of Department of Labor regulations and the FLSA. LaMantia testified that L & F considered Cruz exempt from the FLSA under the exception for loaders, but LaMantia admitted that L & F's other loaders were paid time and a half for overtime. LaMantia further testified that L & F considered Cruz a bona fide executive. However, LaMantia conceded knowledge that the FLSA bona fide executive exception does not generally apply to working foremen who perform the same duties as the coworkers they supervise. Finally, LaMantia agreed that L & F's reliance on the results of the 1988 investigation was not based on any determination of Cruz's job status; instead, it was based on Cruz's omission from the summary of unpaid wages.

The finding that L & F's violation of the FLSA was willful is supported by more than a scintilla of evidence and is neither clearly wrong nor manifestly unjust. After conducting a legal sufficiency review of the evidence and inferences supporting the jury's finding and a factual sufficiency review of all the evidence, we overrule L & F's fourth cross-point.

### G. Good Faith Under the FLSA

By its remaining cross-point, L & F argues that it did not pay overtime because of its good faith reliance on Department of Labor regulations and that the court should have

submitted this issue to the jury. Under the FLSA, the employer's good faith is relevant to two distinct issues. First, an employer may raise good faith under section 259 as an absolute defense against the claim for unpaid overtime compensation. 29 U.S.C.A. § 259. Second, the employer may raise good faith under section 260 as a partial defense to the FLSA's liquidated damages provision. *Id.* § 260. L & F argues that it acted in good faith under both sections.

### 1. Absolute Defense

As a defense to any action or proceeding under the FLSA, Congress has provided that

> no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the [FLSA] ... if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation of [the Administrator of the Wage and Hour Division of the Department of Labor], or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged. Such a defense, if established, shall be a bar to the action or proceeding[.]

*Id.* § 259(a), (b)(1).

■ Generally, an employer may not invoke the absolute defense of good faith if its reliance is based on a determination by a mere investigator for the Department of Labor. *Carrasco v. Texas Transp. Inst.,* 908 S.W.2d 575, 577–78 (Tex.App.—Waco 1995, no writ). Specifically, a summary of unpaid wages by a compliance officer with the Wage and Hour Division of the Department of Labor cannot serve as the basis for an employer's defense. *Murphy v. Miller Brewing Co.,* 307 F.Supp. 829, 838 (E.D.Wis.1969), *aff'd sub nom. Hodgson v. Miller Brewing Co.,* 457 F.2d 221, 228 (7th Cir.1972).

■ The absolute defense protects employers who have acted in good faith when the Administrator of the Wage and Hour Division of the Department of Labor issues an erroneous interpretation of the FLSA.

However, the defense is not available to the employer who acted in reliance on its own misinterpretation of the FLSA or Department of Labor regulation. *Cole v. Farm Fresh Poultry, Inc.,* 824 F.2d 923, 927 (11th Cir.1987); *Nelson v. Alabama Inst. For Deaf & Blind,* 896 F.Supp. 1108, 1113–14 (N.D.Ala.1995). Moreover, the absolute defense does not apply unless the source on which the employer relied provides a clear answer to the employer's particular situation. *Horan v. King County,* 740 F.Supp. 1471, 1481 (W.D.Wash.1990) (citing *Cole,* 824 F.2d at 927–28).

■ As discussed above, we reverse a judgment when the court fails to submit a properly requested issue on a vital defense that was pleaded and supported by more than a scintilla of evidence. TEX.R. CIV. P. 277, 278; *Exxon,* 842 S.W.2d at 631. However, the proof offered at trial indicated that L & F relied on an investigator's summary of unpaid wages and its own misinterpretation of the FLSA and Department of Labor regulations. This proof is no evidence to support submission of the absolute defense of good faith. As a result, the trial court did not err by refusing to submit L & F's good faith defense to the jury.

### 2. Partial Defense

By Cruz's fourth cross-point and L & F's reply to that point, the parties dispute whether Cruz is entitled to liquidated damages or whether L & F established good faith under section 260. The FLSA provides that any employer who violates its provisions for overtime pay "shall be liable to the employee or employees affected in the amount of their unpaid ... overtime compensation ... and in an additional equal amount as liquidated damages." 29 U.S.C.A. § 216(b). However, the FLSA also provides the following defense to the liquidated damages provision:

> [I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated

damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

*Id.* § 260.

The trial court did not reach the issue of liquidated damages because it disregarded both findings that awarded Cruz compensation for unpaid overtime and entered judgment for L & F on this claim. Having determined that the court erred by disregarding the jury's findings, and that L & F has not shown grounds for remand by its cross-points, we must consider the liquidated damages issue.

Cruz argues that the jury's undisturbed finding that L & F willfully violated the FLSA eliminates the trial court's discretion to find that L & F acted in good faith. The Sixth and Tenth Circuits have adopted this reasoning. *See Brinkman v. Department of Corrections,* 21 F.3d 370, 372–73 (10th Cir.), *cert. denied,* 513 U.S. 927, 115 S.Ct. 315, 130 L.Ed.2d 277 (1994); *EEOC v. City of Detroit Health Dept.,* 920 F.2d 355, 358 (6th Cir. 1990). These circuits resolve the issue under the Seventh Amendment's guarantee that "the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." U.S. CONST. amend. VII. Yet the Fourth Circuit has reached a contrary conclusion based on the congressional intent expressed by the requirement that an employer must show good faith "to the satisfaction of the court." *Fowler v. Land Management Groupe, Inc.,* 978 F.2d 158, 163 (4th Cir.1992).

No Supreme Court, Fifth Circuit, or Texas cases address this division among the federal circuits, and the procedural background of this case does not require that we directly confront the issue. In the postjudgment motions filed in this case, L & F requested the court to disregard the finding of willfulness. L & F specifically argued that "the evidence clearly demonstrated that L & F Distributors was relying, in good faith, upon prior rulings and regulations of the Department of Labor." The court disregarded the jury's answers to questions immediately preceding and following the question regarding L & F's willfulness, but did not disturb the finding of willful conduct. Because L & F challenged the wilfulness finding on the express grounds that it acted in good faith, we cannot say that the trial court did not consider the issue of L & F's good faith.[2] By leaving the finding of willfulness intact, the court rejected L & F's argument that it acted in good faith when determining whether its conduct was prohibited.

We must consider the court's rejection of L & F's good faith argument in light of the burden of proof. The full award of liquidated damages is mandatory unless the employer carries the "substantial burden" of proving that its violation of the FLSA was both in good faith and predicated on reasonable grounds. *Mireles v. Frio Foods, Inc.,* 899 F.2d 1407, 1415 (5th Cir. 1990). By refusing to disregard the finding of willfulness, the court found some evidence to reject L & F's argument that it acted in good faith. Because the court must award liquidated damages unless the employer proves good faith, we sustain Cruz's fourth cross-point.

## III. ATTORNEY'S FEES

By its fourth point of error, L & F argues that the court should not have awarded attorney's fees or submitted the issue to the jury because there was no sworn testimony on attorney's fees. We disagree.

To preserve a complaint that an attorney's unsworn statements improperly served as the foundation for an award of fees, the appellant must object and obtain a ruling from the trial court. *See* TEX.R.APP. P. 52(a); *Villalpando v. De La Garza,* 793 S.W.2d 274, 277 (Tex.App.—Corpus Christi 1990, no writ). L & F argues that it did object when it stated, "I don't think he's been sworn." Even if we consider this a proper objection, there can be no dispute that L & F failed to obtain a ruling. Accordingly, L & F

---

2. In fact, the trial court expressly addressed this issue in a letter to the parties that is included in the transcript: "The evidence to support the [jury's] answer to Question 3 is scant but I conclude that there is sufficient evidence to support the jury's finding of willful conduct."

waived any error based on the unsworn nature of the testimony.

■ L & F further argues that the court erred by submitting the question without instructing the jury that the award of attorney's fees must be based on the factors discussed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). As we discussed above, however, parties are bound by the wording of a question as submitted unless they have objected or tendered a properly worded limiting instruction. *Cameron*, 618 S.W.2d at 538 n. 4; *Allen*, 380 S.W.2d at 609. L & F did not mention the *Johnson* case or the twelve *Johnson* factors during its objections to the jury charge and did not tender a pertinent instruction. As a result, the parties are bound by the question on attorney's fees as it was submitted to the jury, and we overrule L & F's fourth point of error.

## IV. CONCLUSION

We reverse the trial court's judgment in favor of Cruz on his claim for retaliatory discrimination and render judgment that Cruz take nothing on that cause of action. We also reverse the judgment in favor of L & F on Cruz's claim for unpaid overtime compensation and render judgment awarding Cruz (1) $29,596.20 in unpaid overtime, (2) an additional equal amount in liquidated damages, (3) attorney's fees of $11,838.48, and (4) postjudgment interest as awarded by the trial court.

FEDERICO G. HINOJOSA, Jr., Justice, concurs and dissents.

I concur with the majority on the retaliatory discharge claim. However, I dissent because I do not agree with the majority's analysis and disposition of the claim for unpaid overtime compensation.

Under the Fair Labor Standards Act (FLSA), employees are generally entitled to overtime pay for hours they work in excess of forty a week, but this provision does not apply to "a bona fide executive." 29 U.S.C. § 213(a)(1). Bona fide executives are not entitled to overtime pay. *Id.* The jury was asked whether Cruz was a bona fide executive by a question that included the following definition:

An employee who is compensated on a salary basis at a rate of not less than $250 per week is deemed to be a bona fide executive if the employee's primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof and includes the customary and regular direction of the work of two or more other employees therein.

*See* 29 C.F.R. § 541.1(f) (1995) (defining "executive" in similar terms). Cruz did not object to this definition at the charge conference, and he raises no argument on appeal to challenge this definition. Accordingly, I would consider Cruz's testimony and the other uncontroverted evidence in light of this definition.

Cruz testified that he was paid at a regular rate of $368.80 per week. The record contains no evidence to the contrary. During cross-examination, L & F's attorney asked Cruz whether he considered himself "in charge of the warehouse." Cruz answered, "Of the warehouse, yes, sir." Cruz offered no evidence to dispute L & F's evidence that the warehouse was a recognized subdivision of L & F's business. Regarding his direction of two or more workers, Cruz testified as follows:

A: [The part-time coworkers] were hired by Mr. Leo Longoria who was a chain store manager or Esther Robles in the office. They would bring them over to the back or to the warehouse and they would just tell me, "Hey, this is Mr. So and So, he's going to help you out, just tell him what to do." And that's how they were introduced to me.

Q: When they brought one of these college kids to you and said, "He's going to help you," what would you do with them?

A: Well, first of all, I would go around and show him and tell him what kind of beer, what brand, to be real careful with the codes on the boxes to be sure that we always ship the oldest beer first so it won't get old in the warehouse, and show him the different

packages like the 7–ounce, the 8–ounce, quarts, bottles, cans and so on and so on.

\* \* \* \* \* \* \*

For the first two or three days or a week or whatever, I would tell him to help load the trucks with a dolly or a two wheeler or whatever. When they came in the afternoon and there were no trucks, I told them, "Start driving the forklift so you can get used to it and learn how to drive a forklift because I want you to help me out with the trucks." He would get on the forklift and drive it back and forth just to get used to the forklift and shift it up and down and sideways so he could learn. Then he would start slowly, you know, loading the trucks. Yeah, he would make mistakes. That's where I told him to do it this way or do it this other way or don't do it this way. I mean, I tried to teach him what I could, what I knew.

In addition to Cruz's testimony, the record contains uncontroverted testimony from Jack Gilpin who stated that Cruz had supervisory authority over the janitor.

Accordingly, I would sustain L & F's first cross-point and hold that Cruz was a bona fide executive as a matter of law. I would render a take-nothing judgment on Cruz's claim for overtime compensation.