Affirmed and Opinion filed August 15, 2006








Affirmed and Opinion filed August 15, 2006.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-00504-CV

____________

 

HIRSCHFELD STEEL COMPANY, INC., Appellant

 

V.

 

KELLOGG BROWN & ROOT, INC. AND
HARRIS COUNTY-HOUSTON SPORTS AUTHORITY, Appellees

 



 

On Appeal from the 270th
District Court

Harris County, Texas

Trial Court Cause No. 02-24591

 



 

O P I N I O N








This case arises out of the construction of what is now
known as Minute Maid Park and involves disputes among the owner of the ball
park, the general contractor, and one of its subcontractors.  The subcontractor
sued the general contractor asserting contract claims for retainage and
contract damages as well as seeking a declaratory judgment against both the
owner and the general contractor that the subcontractior=s ten-year
warranty on the park=s retractable roof was void.  The general
contractor asserted a counterclaim for breach of contract and declaratory
relief.  The trial court granted summary judgment denying the subcontractor=s claims for
declaratory relief against the general contractor and the owner.  After a jury
trial, the trial court  rendered judgment that both the subcontractor and the
general contractor take nothing on their claims against each other.  On appeal,
the subcontractor (1) challenges the legal and factual sufficiency of the jury=s finding that it
did not substantially perform its duties under the subcontract, (2) asserts the
trial court abused its discretion in admitting evidence regarding the warranty,
(3) claims the trial court erred in not rendering judgment in its favor on an
allegedly separate and independent contract claim for maintenance work on the
roof, and (4) argues the trial court erred in rendering summary judgment
dismissing its declaratory-judgment claims.  In its cross-appeal, the general
contractor asserts the trial court erred in denying it attorney=s fees under
provisions of the subcontract allowing the prevailing party in litigation
between the subcontractor and the general contractor to recover attorney=s fees.  We affirm
the trial court=s judgment.  

                        I.  Factual and Procedural Background

Appellee Harris County-Houston Sports Authority
(hereinafter the ASports Authority@) is the owner of
Minute Maid Park, a state-of-the-art professional baseball stadium located in
downtown Houston.  In December 1997, the Sports Authority and appellee Kellogg
Brown & Root, Inc. (AKellogg@) entered into a
contract for the construction of Minute Maid Park (hereinafter the AConstruction
Contract@).  In May of
1998, Kellogg and appellant Hirschfeld Steel Company, Inc. (hereinafter AHirschfeld@) entered into a
subcontract, under which Hirschfeld agreed to provide various metal systems for
Minute Maid Park (hereinafter the ASubcontract@).  As part of the
Subcontract, Hirschfeld agreed to design and build all structural,
architectural, electrical, and mechanical components required to provide a complete
and working retractable roof system for Minute Maid Park (hereinafter ARoof System@).  Under the
Subcontract, Hirschfeld also was required to warrant various aspects of the
Roof System for ten years.








                         Performance
of First-Year Maintenance Services

Hirschfeld subcontracted with Uni-Systems, Inc. to perform
some of the services required under the Subcontract.  Uni-Systems provided some
first-year maintenance services for the Roof System, but a dispute arose over
who was supposed to pay for these services.  The Sports Authority asserted that
first-year maintenance services were included in the Construction Contract and
should be performed at no additional cost to the Sports Authority.  Kellogg
asserted that these services were not included in the Construction Contract and
that Kellogg was entitled to a change order under that contract giving it
additional compensation for providing these services.  As between the Sports
Authority and Kellogg, an arbitration panel eventually ruled against the Sports
Authority=s position and determined that Kellogg was not
obligated to provide the first-year maintenance services without receiving
additional compensation.  In any event, Uni-Systems allegedly provided various
first-year maintenance services and sought payment from Hirschfeld for these
services.  Hirschfeld settled with Uni-Systems and then sought payment from
Kellogg for the first-year maintenance services allegedly provided on its
behalf by Uni-Systems.  

                       Subcontractor=s Suspension of
Ten-Year Warranty

On September 22, 2000, Hirschfeld sent a letter to Kellogg
stating that Hirschfeld was  declaring the ten-year warranty suspended based on
the Sports Authority=s alleged failure to perform maintenance
on the Roof System allegedly required by the ten-year warranty.  Hirschfeld
asserted that the warranty would be suspended until Hirschfeld reinstated the
warranty based on the occurrence of various events, including completion of all
repairs necessitated by the Sports Authority=s failure to
perform the required maintenance and the performance of all required
maintenance on the roof mechanism. Hirschfeld did not thereafter reinstate its
ten-year warranty.  








              Settlement Agreement Between Owner and
General Contractor

Kellogg and the Sports Authority finally resolved all of
their differences regarding this project and entered into a settlement
agreement effective March 29, 2002.  This agreement provided that Kellogg would
receive final payment from the Sports Authority by April 26, 2002.  In this
agreement, Kellogg agreed that the ten-year warranty on the Roof System is in
full force and effect and is enforceable directly against Kellogg
notwithstanding the purported revocation of this warranty by Hirschfeld.  

                                                       Litigation

In May 2002, Hirschfeld filed this lawsuit against Kellogg
and the Sports Authority. Hirschfeld asserted claims against Kellogg for
retainage under the Subcontract and other contract damages.  Hirschfeld also
sought a declaratory judgment against both the Sports Authority and Kellogg
that its ten-year warranty on the retractable roof was void because of an
alleged failure to perform required maintenance on the Roof System.  Kellogg
counterclaimed for breach of contract and declaratory-judgment relief.  

The Sports Authority and Kellogg filed motions for summary
judgment asserting, among other things, that (1) the trial court lacked subject
matter jurisdiction over Hirschfeld=s declaratory-judgment
claims regarding the ten-year warranty because the claims were not ripe and (2)
as a matter of law, the Subcontract does not make performance of maintenance on
the Roof System a condition precedent to the existence of Hirschfeld=s warranty.  The
trial court granted both motions for summary judgment and dismissed Hirschfeld=s claims for a
declaratory judgment that its warranty was void.  








The contract claims of Kellogg and Hirschfeld were tried to
a jury.  The jury found that (1) Hirschfeld did not substantially perform its
duties under the Subcontract; (2) $1,259,922 remains unpaid under the
Subcontract; (3) remedying or repairing Hirschfeld=s defects and/or
omissions would cost $500,000; (4) Hirschfeld performed first-year maintenance
through its subcontractor Uni-Systems as directed by Kellogg; and (5) $240,000
is the fair and reasonable value of the first-year maintenance provided by
Hirschfeld through its subcontractor Uni-Systems.

The trial court signed a final judgment incorporating its
summary-judgment rulings on Hirschfeld=s
declaratory-judgment claims and ordering that Hirschfeld and Kellogg take
nothing by their claims.  The trial court denied Kellogg=s request for
attorney=s fees under a
provision in the Subcontract allowing the prevailing party in litigation
between the parties to recover its attorney=s fees. 
Hirschfeld appealed, and Kellogg cross-appealed.

                                            II.
Issues Presented

On appeal, Hirschfeld raises the following issues:

(1)     Is the evidence legally and factually
sufficient to support the jury=s finding that Hirschfeld did not substantially perform its duties
under the Subcontract?

(2)     Did the trial court reversibly err in
admitting allegedly irrelevant testimony regarding Hirschfeld=s suspension of its warranty?

(3)     In light of the jury=s findings, did the trial court
erroneously refuse to render judgment in favor of Hirschfeld on its claim for
$240,000 and attorney=s fees based on its claim regarding
first-year maintenance?

(4)     Did the
trial court err in granting summary judgment as to Hirschfeld=s claims against
Kellogg and the Sports Authority for declaratory judgment regarding the
ten-year warranty?

In its cross-appeal, Kellogg asserts the trial court erred
by not awarding Kellogg its attorney=s fees.

                                        III. Standards of Review








In
reviewing the trial court=s traditional summary judgment as to Hirschfeld=s declaratory-judgment claims, we
take as true all evidence favorable to the non‑movant, and we make all
reasonable inferences in the non‑movant=s favor.  Dolcefino v. Randolph,
19 S.W.3d 906, 916 (Tex. App.CHouston [14th Dist.] 2000, pet. denied).  If the movant=s motion and summary‑judgment
evidence facially establish its right to judgment as a matter of law, the
burden shifts to the non‑movant to raise a genuine, material fact issue
sufficient to defeat summary judgment.  Id.  

In construing the Subcontract, our primary concern is to
ascertain and give effect to the intentions of the parties as expressed in the
contract.  Kelley‑Coppedge, Inc. v. Highlands Ins. Co., 980 S.W.2d
462, 464 (Tex. 1998).  To ascertain the parties= true intentions,
we examine the entire agreement in an effort to harmonize and give effect to
all of its provisions so that none will be rendered meaningless.  MCI
Telecomms. Corp. v. Tex. Utils. Elec. Co., 995 S.W.2d 647, 652 (Tex.
1999).  Whether a contract is ambiguous is a question of law for the court.  Heritage
Res., Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex.  1996).  A contract is
ambiguous when its meaning is uncertain and doubtful or is susceptible to more
than one reasonable interpretation.  Id.  However, when a written
contract is worded so that it can be given a certain or definite legal meaning
or interpretation, it is unambiguous, and the court construes it as a matter of
law.  Am. Mfrs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d 154, 157 (Tex.
2003). 

                                                    IV.
Analysis    

A.      Did the
trial court err in granting summary judgment as to the declaratory-judgment
claims relating to the ten-year warranty?








In its fourth issue, which we address first, Hirschfeld
asserts that the trial court erred in granting summary judgment as to its
claims for declaratory judgment regarding the ten-year warranty.  In their
motions for summary judgment, Kellogg and the Sports Authority argued the trial
court lacked subject matter jurisdiction because the declaratory-judgment
claims are not ripe and, in the alternative, they fail on the merits.  The
trial court granted the motions without specifying the grounds.  Because the
trial court dismissed the claims with prejudice rather than without prejudice,
it does not appear that the trial court concluded it lacked jurisdiction under
the ripeness doctrine.  However, it is possible the trial court found a lack of
ripeness and rendered an improper judgment based on this determination. 
Furthermore, even if the trial court did not conclude the declaratory-judgment
claims were not ripe, we still would lack jurisdiction if this were so. 
Therefore, we must address the ripeness issue in any event.  

In deciding a ripeness issue, we ask whether, at the time a
lawsuit is filed, the facts have developed sufficiently so that an injury has
occurred or is likely to occur, rather than being contingent or remote. 
Patterson v. Planned Parenthood of Houston & Se. Tex., Inc., 971 S.W.2d
439, 442 (Tex. 1998).  The ripeness inquiry thus focuses on whether the case
involves uncertain or contingent future events that may not occur as
anticipated or may not occur at all.  Id.  By maintaining this focus,
the ripeness doctrine serves to avoid premature adjudication.  Id.  

The Texas Declaratory Judgment Act is a remedial statute
whose purpose is to afford relief from uncertainty and insecurity with respect
to rights, status, and other legal relations.  Tex.
Civ. Prac. & Rem. Code Ann.
' 37.002(b) (Vernon
1997).  We must construe and administer this statute liberally.  Id.  A
court of record, acting within its jurisdiction, has power to declare rights,
status, and other legal relations whether or not further relief is or could be
claimed.  Id. ' 37.003(a) (Vernon 1997).  A person with
an interest in a written contract may ask a court to determine any question of
construction or validity arising under the contract and obtain a declaration of
rights, status, or other legal relations thereunder.  Id. ' 37.004(a) (Vernon
1997).  A contract may be construed either before or after a breach.  Id.
' 37.004(b). 








Kellogg and the Sports Authority assert that Hirschfeld=s
declaratory-judgment claims regarding the ten-year warranty are not ripe
because so far no warranty claims have been made or threatened.  However, the
record reflects that there is a real and current controversy regarding this
warranty.  Kellogg relies on its interpretation of the warranty to support the
trial court=s take-nothing judgment on Hirschfeld=s contract claim. 
If Hirschfeld=s construction of the warranty is correct, this court=s analysis of
Hirschfeld=s first and second issues on appeal will be affected. 
After careful consideration, we conclude that Hirschfeld=s
declaratory-judgment claims regarding the ten-year warranty are ripe.  See
Patterson, 971 S.W.2d at 442; City of Waco v. Tex. Nat. Res. Conserv.
Comm=n, 83 S.W.3d 169, 175B78 (Tex. App.CAustin 2002, pet.
denied) (holding that declaratory-judgment claims were ripe).  Therefore, we
have appellate jurisdiction over these claims, and the trial court erred to the
extent it granted summary judgment on this basis.

We now must decide whether the trial court erred in
refusing to grant Hirschfeld=s request for a declaratory judgment that
its ten-year warranty is void and its revocation of this warranty was
effective.  Hirschfeld argues that it no longer owes any obligations under the
ten-year warranty on the Roof System because alleged express conditions
precedentCscheduled inspections and maintenanceCdid not occur. 
Hirschfeld asserts that the performance of the inspections and maintenance is a
condition precedent to the existence of the ten-year warranty as a matter of
law, or in the alternative, that the Subcontract is ambiguous in this regard.  

The Subcontract states the following:

4. This Subcontractor shall provide a Ten (10) Year Warranty for the
Mechanized Retractable Roof System which incorporates the Structural Steel,
Roof Deck and Roof Mechanization System in its entirety.  The Ten-Year Warranty
shall provide the following coverage:

a.  This Subcontractor shall warrant the structural steel and deck against
all defects in quality and workmanship, manufacture and installation for a
period of ten (10) years, from the date of Substantial Completion of the
project.

b.  This Subcontractor shall warrant the roof mechanism against all
defects in quality and workmanship, manufacture and installation for a period
of ten (10) years, from the date of Substantial Completion of the project.

c.  This Subcontractor shall warrant the design of the roof mechanism
and the roof Structure [sic] against errors and omissions for a period of ten
(10) years from the date of Substantial Completion of the project.

5. This Subcontractor shall warrant the interface between design of the
structural Roof [sic] system and the roof mechanism for a period of ten (10)
years from the date of final completion of the project.  The following
clarifications are acknowledged as a basis of Subcontractor=s [Guaranteed Maximum Price]:








a.  This Subcontractor shall warrant the design, manufacture, and
installation of the roof mechanism to perform [its] intended purpose of; [sic]
opening and closing the roof structure without excessive noise, excessive
vibration, and/or excessive wear for a period of ten (10) years from the date
of Substantial Completion of the project.

b.  Acts of God and other normal insurable risks are excluded from this
warranty.

c.  Architectural elements (i.e. glass, roof membrane) are excluded
from this warranty.

d.  Adequacy of design of structural roof components to perform as a
static roof is excluded from this warranty (i.e. if the roof design is
determined to be adequate for a static roof under design loads, this
Subcontractor will guarantee the performance of the roof structure and
mechanism to jointly perform their designed function; if the roof design were
to be determined to be inadequate for a static roof under design loads, this
Subcontractor does not warrant that inadequacy).

6.  This Subcontractor shall specify and publish a ten- (10) year
written maintenance program for the Roof Mechanization System, which includes a
manufacturer recommended maintenance schedule.  The ten- (10) year maintenance
program shall be submitted to the Architect/Engineer of record.  However,
the Architect/Engineer of record=s review comments must not diminish the integrity of
the specified maintenance program as a condition of the ten- (10) year
warranty, unless the subject revisions are accepted by the Contractor. This Subcontractor=s ten (10) [sic] year written
maintenance program shall include but is not limited to the folllowing:

a.  A schedule of daily and weekly inspections required to be performed
by the Owners [sic] Roof Mechanization System operator, which will facilitate
identification of potential maintenance issues.  

b.  A schedule of quarterly required maintenance and inspections to be
performed by a maintenance contractor to be selected by the Owner.  The Owner
shall publish quarterly reports to this Subcontractor, (copied to the
Contractor) [sic] The Owner=s quarterly maintenance and inspections shall include (at a minimum)
but are not limited to the following:

1.  The maintenance contractor selected by the Owner shall grease all
wheel bearings, lubricate all open gearing, clean power feed rail, clean
microwave guide, clean all electrical component cooling fins.  








2.  The maintenance contractor selected by the Owner shall perform a
full system inspection, utilizing a minimum of sixty (60) man hours and two (2)
technicians.  The full system inspection shall be developed and published by
this Subcontractor in accordance with the completed design, and reviewed by the
Architect/Engineer of record.

3.  The maintenance contractor selected by the Owner shall perform a Apoint by point@ inspection, developed and
published by this Subcontractor in accordance with the completed design
reviewed by the Architect/Engineer of record on this project.

c.  A schedule of annual maintenance and inspections required to be
performed by the maintenance contractor selected by the Owner, which shall
include all structural, mechanical, and electrical components, including
finishes.  An inspection report shall be published to this Subcontractor (and
copied to the Contractor) [sic] By the Owner, which includes detailed
observations and recommendations.  The Owner=s annual maintenance and inspections shall include (at a
minimum) but are not limited to the following:

1.  The maintenance contractor selected by the Owner shall perform a Apoint by point@ inspection, developed and
published by this Subcontractor in accordance with the completed design, and
submitted to the Architect/Engineer of record on this project.  The Owner shall
submit a copy of the inspection report to this Subcontractor and the
Contractor.

2.  The maintenance contractor selected by the Owner shall implement a
local observation system that will be monitored via modem at all times, each
time the roof is operated.  The Owner shall submit pertinent information
regarding the location of the observation post and contact information shall be
submitted to this Subcontractor and the Contractor.  The Owner shall dispatch a
local technician to the site in the event any problems are detected, and notify
this Subcontractor accordingly.  This Subcontractor shall advise the Owner as
required to resolve any operational malfunctions.  This Subcontractor shall
maintain a permanent record regarding issues of this nature throughout the life
of the warranty [sic] A complete report regarding issues of this nature shall
be submitted to the Contractor by the Subcontractor.

Attachment B of the Subcontract
(emphasis added).








Relying primarily on the italicized language above,
Hirschfeld asserts that the written maintenance program described in Paragraph
6 above is a condition precedent and that, if this maintenance program is not
followed, then its ten-year warranty is void.  To determine whether a condition
precedent exists, the intention of the parties must be ascertained, and that
can be done only by looking at the entire contract.  Criswell v. European
Crossroads Shopping Ctr., Ltd., 792 S.W.2d 945, 948 (Tex. 1990).  To make
performance specifically conditional, a term such as Aif,@ Aprovided that,@ Aon condition that,@ or some similar
phrase of conditional language normally must be included.  Id.  If no
such language is used, the terms typically will be construed as a covenant in
order to prevent a forfeiture.  Id.  Though there is no requirement that
such phrases be utilized, their absence is probative of the parties= intention that a
promise be made, rather than a condition imposed.  Id.  In construing a
contract, forfeiture by finding a condition precedent is to be avoided when
another reasonable reading of the contract is possible.  Id.  When the
intent of the parties is doubtful or when a condition would impose an absurd or
impossible result, the agreement will be interpreted as creating a covenant
rather than a condition. Id.  Because of their harshness in operation,
conditions are not favored in the law.  Id.  








There is no language in the Subcontract stating that there
will be a ten-year warranty from Hirschfeld Aif,@ Aprovided that,@ or Aon condition that@ the written
maintenance program is followed.  There is no contract language stating that
nonperformance of the maintenance program will void the warranty.[1] 
Hirschfeld focuses on a sentence that uses the word Acondition@; however, this
sentence notably does not use the term Acondition
precedent.@  The term Acondition@ can mean a
condition precedent, but it also can be used more generally to mean a term or
provision in a contract that is not a condition precedent.  See Black=s Law Dictionary 312B13 (8th ed. 2004)
(defining condition as Aa future and uncertain event on which the
existence or extent of an obligation or liability depends@ and also as Aa term, provision,
or clause in a contract@).  In Attachment B of the Subcontract,
the parties first describe the ten-year warranty required of Hirschfeld in
sections 4 and 5, and then, in section 6, they require Hirschfeld to publish a
ten-year written maintenance program, which Hirschfeld must submit to the
Architect/Engineer.  The  sentence upon which Hirschfeld relies states that,
although the Architect/Engineer may make comments and suggest revisions to this
maintenance program, these comments and suggested revisions alone do not change
the maintenance program unless Kellogg accepts them.  In the course of stating
this, the parties provided in the Subcontract that the Architect/Engineer=s comments Amust not diminish
the integrity of the specified maintenance program as a condition of the
ten- (10) year warranty, unless the subject revisions are accepted by the
Contractor.@  However, given that these sophisticated parties do
not indicate in any other sentence of the Subcontract that performance of the
written maintenance is a condition precedent to the existence of Hirschfeld=s warranty
obligation, it seems unlikely that if they intended as much they would have
mentioned it only in passing as they were addressing the effect of the
Architect/Engineer=s comments on the written maintenance program.

Sections 4 and 5 require Hirschfeld to warrant for ten
years (1) the Structural Steel, Roof Deck and roof mechanism against all
defects in quality and workmanship, manufacture, and installation, (2) the
design of the roof mechanism and roof structure against errors and omissions,
(3) the interface between the design of the structural roof system and the roof
mechanism, and (4) the design, manufacture, and installation of the roof
mechanism to perform its intended purpose of opening and closing the roof
structure without excessive noise, excessive vibration, and/or excessive wear. 
Given these substantial warranties, it would not be reasonable to interpret the
passing reference in the Subcontract as stating a condition precedent, and it
would not be reasonable to interpret this statement as an intention to void the
ten-year warranty based on the failure to make one daily inspection or the
failure to grease one wheel bearing, as required by the written maintenance
program in section 6. 








After considering the entire Subcontract under the
applicable legal standard, we conclude that, under the unambiguous language of
the Subcontract, performance of the written maintenance plan is not a condition
precedent to the existence of Hirschfeld=s ten-year
warranty.  See Criswell, 792 S.W.2d at 948B49 (holding that
contract language did not make sale of the property on a condominium basis a
condition precedent to plaintiff=s entitlement to
compensation); Sturges v. System Parking, Inc., 834 S.W.2d 472, 474
(Tex. App.CHouston [14th Dist.] 1992, writ dism=d by agr.) (concluding
there was no condition precedent under contract as a matter of law).  The trial
court did not err in granting the traditional motions for summary judgment
filed by the Sports Authority and Kellogg and in  dismissing with prejudice
Hirschfeld=s declaratory-judgment claims regarding the ten-year
warranty.[2] 
Accordingly, we overrule Hirschfeld=s fourth issue.

B.      Is the evidence legally and factually sufficient to
support the jury=s finding that the subcontractor
did not substantially perform its duties under the Subcontract?








In its first issue, Hirschfeld attacks the legal and
factual sufficiency of the evidence to support the jury=s finding that
Hirschfeld failed to substantially perform its duties under the Subcontract. 
Because Hirschfeld had the burden of proof as to this issue, for Hirschfeld to
succeed in its legal-sufficiency challenge, we must conclude that Hirschfeld
conclusively proved it substantially performed its duties under the Subcontract
as a matter of law.  See Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241
(Tex. 2001).  Hirschfeld asserts it made this showing and therefore the trial
court should have awarded it attorney=s fees and
$759,922Cthe difference
between the amount the jury found was unpaid under the Subcontract ($1,259,922)
and the cost of remedying or repairing Hirschfeld=s defects and
omissions as found by the jury ($500,000).  In making this determination, we
must consider the evidence in the light most favorable to the challenged
finding and indulge every reasonable inference that would support it.  See
City of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex. 2005).  We must credit
favorable evidence if a reasonable factfinder could and disregard contrary
evidence unless a reasonable factfinder could not.  See id. at
827.  We must determine whether the evidence at trial would enable a reasonable
and fair-minded person to find the facts at issue.  See id.  The
factfinder is the sole judge of the credibility of the witnesses and the weight
to be given their testimony.  See id. at 819.  Evidence is
conclusive only if reasonable people could not differ in their conclusions.  See
id.  

As to
Hirschfeld=s factual-sufficiency challenge, we examine the entire record,
considering both the evidence in favor of, and contrary to, the challenged
finding.  Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).  After
considering and weighing all the evidence, we set aside the fact finding only
if it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust.  Pool v. Ford Motor Co., 715 S.W.2d 629, 635
(Tex. 1986).  The trier of fact is the sole judge of the credibility of the
witnesses and the weight to be given to their testimony.  GTE Mobilnet of S.
Tex. v. Pascouet, 61 S.W.3d 599, 615B16 (Tex. App.CHouston [14th Dist.] 2001, pet.
denied).  We may not substitute our own judgment for that of the trier of fact,
even if we would reach a different answer on the evidence.  Maritime
Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex. 1998).  The amount of
evidence necessary to affirm a judgment is far less than that necessary to
reverse a judgment.  Pascouet, 61 S.W.3d at 616. 

The jury found that Hirschfeld did not substantially
perform its duties under the Subcontract based on the following instruction
regarding substantial performance:

To establish Asubstantial
performance@ Hirschfeld must show that: [sic] it has not willfully
departed from the terms of the Subcontract, that it has not omitted essential
points of the Subcontract, that it has honestly and faithfully performed the
construction contract in its material and substantial particulars, and that the
only variance from the strict and literal performance of the Subcontract
consists of technical or unimportant omissions or details.








With
the exception of using a different word to refer to the Subcontract, this
instruction regarding the meaning of Asubstantial
performance@ is identical to the instruction proposed by
Hirschfeld in its pretrial submission to the trial court.  At trial, no party
objected to this instruction as to what constitutes Asubstantial
performance.@[3]  Therefore, we
review the sufficiency of the evidence under the above instruction, without
regard to whether it is a correct statement of the law.  See St. Joseph
Hosp. v. Wolff, 94 S.W.3d 513, 530 (Tex. 2003) (stating that appellate
courts in civil cases review sufficiency of evidence based on the definitions
contained in the charge, unless a party objects to the charge and points out
the correct definition that is not being used in the charge); Osterberg v.
Peca, 12 S.W.3d 31, 55 (Tex. 2000) (holding that court could not review the
sufficiency of the evidence based on a particular legal standard because that
standard was not submitted to the jury and no party objected to the charge on
this ground or requested that the jury be charged using this standard); L&F
Distributors v. Cruz, 941 S.W.2d 274, 279, 286 (Tex. App.CCorpus Christi 
1996, writ denied) (holding that parties are bound by a charge that misinforms
the jury about the substantive law unless a party properly brings the defect in
the charge to the trial court=s attention).  

As discussed above, the Subcontract required Hirschfeld to
warrant various matters relating to the Roof System for ten years.[4] 
According to the March 29, 2002 Settlement Agreement between the Sports
Authority and Kellogg (hereinafter ASettlement
Agreement@), the ten-year warranty commenced on August 1, 2000. 
Although Kellogg may have admitted in its counterclaim that Hirschfeld Aprovided@ Kellogg with a
ten-year warranty, this does not prevent Kellogg from asserting, as it has, that
Hirschfeld suspended, revoked, or repudiated the warranty that it provided.  

On September 22, 2000, Hirschfeld sent a letter to Kellogg
stating the following:








!       After the Roof System was put in service and
used to support the Sports Authority=s use of Minute Maid Park, the Sports Authority failed to
perform or cause to be performed the level of maintenance required by
Hirschfeld=s ten-year warranty on the Roof
System and required by the manufacturer=s AO & M manual [sic].@  As a result of this failure,
Hirschfeld believed as of September 22, 2000, that the roof mechanism was
unreliable and potentially in disrepair.  

!       Additionally, because the required
maintenance was not being performed by or on behalf of the Sports Authority,
the terms of Hirschfeld=s ten-year warranty have not been
satisfied.

!       Hirschfeld believes the Sports Authority=s failure to comply with these
warranty requirements Aentitles [Hirschfeld] to declare
its warranty obligations suspended until such time as the roof mechanism
commissioning has been completed, all repairs necessitated by [the Sports
Authority=s] failure to perform the required
maintenance have been competed, the manufacturer has inspected and certified
that the roof mechanism is in compliance with all original requirements and
operating parameters for such mechanism, and [the Sports Authority] or its
authorized representative has demonstrated that the required maintenance is
being performed on the roof mechanism.@  

!       If all of
these conditions are satisfied, then Hirschfeld will acknowledge that the
ten-year warranty is reinstated, effective retroactively to the date the roof
mechanism was put in service by the Sports Authority.

Hirschfeld
did not reinstate its ten-year warranty after sending this letter.  








Although Kellogg and Hirschfeld have different positions as
to when any final payment by Kellogg to Hirschfeld was due, under either party=s interpretation,
the final payment from Kellogg to Hirschfeld, including any retainage owed, was
not due before April 26, 2002.[5] 
There was evidence before the jury that Hirschfeld provided the ten-year
warranty but then suspended it on September 22, 2000, and thereafter did not
reinstate it.  At trial, Hirschfeld=s corporate
representative testified that (1) the ten-year warranty on the Roof System was Aan important and
critical part of the undertaking@; (2) something
was communicated to the effect that if Hirschfeld was unwilling to offer a
ten-year warranty on the Roof System, then Kellogg would not enter into the
Subcontract with Hirschfeld; (3) when the parties entered into the Subcontract,
Athe 10-year
warranty that Hirschfeld promised to provide was an essential part of the
contract@ and (4) he
considers the words Asuspend@ and Arevoke@ in this context
to be essentially the same.  There is evidence that from September 22, 2000
forward, Hirschfeld asserted that the ten-year warranty was suspended and not
in effect based on the alleged failure to perform an alleged condition
precedentCthe written maintenance plan.  As discussed above,
this maintenance plan is not a condition precedent to the existence of the
ten-year warranty.  Under the applicable standard of review, Hirschfeld did not
conclusively prove that (1) it did not willfully depart from the terms of the
Subcontract, (2) it did not omit essential points of the Subcontract, (3) it
honestly and faithfully performed the construction contract in its material and
substantial particulars, and (4) the only variance from the strict and literal
performance of the Subcontract consists of technical or unimportant omissions or
details.  Furthermore, under the applicable standard of review, we conclude
that there is factually sufficient evidence to support the jury=s finding that,
under the jury charge definition, Hirschfeld did not substantially perform its
duties under the Subcontract. 

On appeal, Hirschfeld asserts that it conclusively proved
substantial performance at trial based on the following arguments:

!       Kellogg admitted in the Settlement Agreement
that the project was completed by August 1, 2000, and, under Texas law,
substantial completion of the Project is the same as substantial performance by
Hirschfeld of all of its duties under the Subcontract.








!       Kellogg and the Sports Authority received the
benefit of their bargain.  Hirschfeld performed its work under the Subcontract,
and only minor repairs were necessary.  Under Texas law, this showing is all
that is needed for Hirschfeld to establish substantial performance of its
obligations under the Subcontract.

!       The cost of the backcharges on the
Subcontract were less then one percent of the Subcontract price.  More than
ninety-nine percent of the work required by the Subcontract allegedly was
performed satisfactorily.

!       Once Hirschfeld provided the warranty, any
subsequent suspension, revocation, or repudiation of the warranty would be a
breach-of- warranty issue that cannot be considered in determining whether
Hirschfeld substantially performed all of its duties under the Subcontract, as
shown by this court=s opinion in Coastal Chem., Inc.
v. Brown, 35 S.W.3d 90, 93 (Tex. App.CHouston [14th Dist.] 2000, pet. denied).

!       Any alleged
failure to perform contractual covenants that do not include any work on the
construction project should not be considered in determining whether Hirschfeld
substantially performed all of its duties under the Subcontract.

Without commenting on the validity of any of these
substantive legal arguments, as a threshold matter, we note that all of these
arguments involve legal standards for what constitutes Asubstantial
performance@ that were not submitted to the jury.  Significantly,
no party objected to the failure to submit these legal standards to the jury,
and no party requested that these legal standards be submitted to the jury. 
Therefore, we cannot use these legal standards in our review of the sufficiency
of the evidence to support the jury=s finding that
Hirschfeld did not substantially perform its duties under the Subcontract.  See
Wolff, 94 S.W.3d at 530; Osterberg, 12 S.W.3d at 55; L&F
Distributors, 941 S.W.2d at 279, 286.  Accordingly, we overrule Hirschfeld=s first issue.

C.      Did the
trial court reversibly err in admitting allegedly irrelevant testimony
regarding the subcontractor=s suspension of
its warranty?

In its second issue, Hirschfeld asserts the trial court
abused its discretion in determining that evidence regarding Hirschfeld=s suspension of
its ten-year warranty was relevant.  Hirschfeld claims that it preserved this
alleged error by its pretrial motion under Texas Rule of Civil Procedure 248,
which states:








When a jury has been demanded, questions of law, motions, exceptions to
pleadings, and other unresolved pending matters shall, as far as practicable,
be heard and determined by the court before the trial commences, and jurors
shall be summoned to appear on the day so designated.

Tex. R. Civ. P. 248.

Nowhere in its Rule 248 motion does Hirschfeld ask the
trial court to exclude any evidence or argue that any evidence is irrelevant. 
Furthermore, our record does not reflect that Hirschfeld obtained a ruling on
this motion.  

Hirschfeld also asserts that it preserved error by the
following objection at trial:

[Counsel for Kellogg]:       Now,
you=re aware, aren=t you, that it=s Hirschfeld=s position in this case that it has
revoked the warranty with regard to the ten-year warranty?

[Counsel for Hirschfeld]:   Objection,
Your Honor.  This is a judiciary [sic] admission on this issuance of the
warranty and there is an issue on this in the motion.

[Trial Court]:           Approach.

(At the Bench, off the record)

Overruled.

Hirschfeld
did not assert in this objection that any evidence was irrelevant.  Because it
did not voice in the trial court the evidentiary complaint it raises in its
second issue on appeal,  Hirschfeld failed to preserve error as to this issue. 
See Hardin v. Hardin, 161 S.W.3d 14, 27 (Tex. App.CHouston [14th
Dist.] 2004, no pet.).  In any event, even if error had been preserved, we
could not conclude that the trial court abused its discretion in admitting this
evidence.  Accordingly, we overrule Hirschfeld=s second issue.

D.      In light of the jury=s findings, did the trial court
erroneously refuse to render judgment in favor of the subcontractor for damages
plus attorney=s fees based on its claim regarding
first-year maintenance?








In its third issue, Hirschfeld asserts that, based on the
jury=s verdict, the
trial court should have rendered judgment in its favor on its claim for $240,000
plus attorney=s fees for first-year maintenance work performed under
a contract independent from the Subcontract.  The jury found that (1)
Hirschfeld performed first-year maintenance through its subcontractor Uni-Systems
as directed by Kellogg and (2) $240,000 is the fair and reasonable value of the
first-year maintenance provided by Hirschfeld through its subcontractor
Uni-Systems.  Hirschfeld asserts that, even if it did not substantially perform
the Subcontract so as to be entitled to relief thereunder, it still is entitled
to recover against Kellogg under an alleged independent oral contract based on
these two jury findings.[6] 
Hirschfeld asserts it does not seek to recover under a theory of quantum
meruit.  








Although Kellogg asserts that Hirschfeld never pleaded such
a claim for breach of an alleged oral contract for first-year maintenance, we
presume for the sake of argument that Hirschfeld did plead such a claim. 
Nonetheless, we conclude that these two jury findings do not entitle Hirschfeld
to relief under this theory.  The jury was neither asked about the formation of
this alleged oral contract nor instructed that it existed.  Even if Kellogg
directed Hirschfeld to perform first-year maintenance through its subcontractor
Uni-Systems, this direction could have been given even if the maintenance work
in question constituted additional work covered by the Subcontract, as asserted
by Kellogg.  Likewise, a determination of the fair and reasonable value of these
services would be appropriate to a quantum meruit claim or to a claim under the
Subcontract if no rate of compensation was specified.  Even if the second
finding were held to be a damages question on this alleged contract claim, we
could not imply findings that these damages resulted from a breach of the
alleged oral contract because such findings would not be in support of the
trial court=s judgment.  See Tex. R. Civ. P. 279 (stating that appellate courts will imply
findings of omitted and unrequested essential elements of a claim whose absence
from the charge did not draw an objection, if (1) at least one essential
element necessarily referable to that claim was found by the jury, (2) there is
factually sufficient evidence to support a finding on the omitted elements, and
(3) the implied findings support the trial court=s judgment); Gulf
States Utilities Co. v. Low, 79 S.W.3d 561, 564 (Tex. 2002) (holding that
findings may be deemed under Rule 279 only when they support the trial court=s judgment).  

After reviewing the record, we conclude that Hirschfeld did
not conclusively prove the existence and breach of an independent oral contract
with Kellogg for the provision of first-year maintenance services.  Therefore,
Hirschfeld=s failure to obtain jury findings on this issue
precludes recovery on this claim.  See Tex.
R. Civ. P. 279 (stating that A[u]pon appeal all
independent grounds of recovery or of defense not conclusively established
under the evidence and no element of which is submitted or requested are waived@); In re S.A.P., 
156 S.W.3d 574, 577 (Tex. 2005).  Accordingly, we overrule Hirschfeld=s third issue.

E.      Did the trial court err in
denying the general contractor recovery of its attorney=s fees under the Subcontract?

The Subcontract contains a provision entitling  A[t]he prevailing
party in any litigation arising out of any dispute between [Kellogg] and
[Hirschfeld]@ to recover its attorney=s fees and all
other costs incurred as a result of this litigation.[7] 
During trial Hirschfeld and Kellogg stipulated that if either of them were
entitled to recover attorney=s fees, then a reasonable and necessary
amount of such fees would be $1.2 million.[8] 
The trial court refused to award Kellogg such fees and did not award either
side any amount of attorney=s fees. 








In its issue on cross-appeal, Kellogg asserts that the
trial court erred in impliedly concluding that it was not a Aprevailing party@ entitled to
attorney=s fees under the
Subcontract.  Hirschfeld went to trial on a petition that asserted
breach-of-contract and declaratory-judgment claims against Kellogg.[9] 
Likewise, Kellogg went to trial on a counterclaim asserting breach-of-contract
and declaratory-judgment claims against Hirschfeld.  Although  Kellogg
requested separate liability and damages questions on its contract counterclaims,
the trial court apparently concluded that a jury finding that Hirschfeld did
not substantially perform its duties under the Subcontract would be equivalent
to a finding that Hirschfeld breached the Subcontract and therefore did not
submit a separate liability question as to Kellogg=s contract
counterclaim.  Likewise, the trial court apparently reasoned that question
three could serve as part of the determination of the amount that should be
deducted from the retainage if Hirschfeld proved substantial performance and
that this question also could be used to determine Kellogg=s damages, if any,
under its counterclaim.  During closing argument at trial, Kellogg, without
objection, argued that the answer to question three should be at least $3.9
million and as much as $5.2 million.  The jury answered A$500,000.@  Therefore, at
trial, Kellogg sought to recover as much as $5.2 million on its contract
counterclaim.  This amount would be $3,940,078 if $1,259,922 (the amount found
by the jury to be unpaid under the Subcontract) is subtracted from the $5.2
million.[10] 
    








On appeal, Kellogg points to its pleadings and emphasizes
the language in its counterclaim, which states that Kellogg sought to recover
no more than $700,000 in addition to keeping the retainage.  Although Kellogg=s counterclaim
does say this, Kellogg overlooks the reality that, if the jury had answered A$5.2 million@ to question three
of the charge, as Kellogg requested, then Kellogg would have been entitled to
amend its counterclaim and recover the greater amount awarded by the jury.  See
Greenhalgh v. Service Lloyds Ins. Co., 787 S.W.2d 938, 939B40 (Tex. 1990)
(stating that trial court would have abused its discretion if it had denied
plaintiff=s request to amend his petition after trial to ask for
$128,000 in punitive damages, which was the amount awarded by the jury, rather
than $100,000, which was the amount requested in his live petition during
trial); Whole Foods Mkt. Sw., L.P. v. Tijerina, 979 S.W.2d 768, 776
(Tex. App.CHouston [14th Dist.] 1998, pet. denied) (stating that A[a]n amendment is
mandatory if it is merely procedural in nature such as conforming the pleadings
to the evidence at trial@).  

In its counterclaim, Kellogg also sought declaratory relief
as to eleven matters.  Both  in its motion for entry of judgment and in one of
its motions to modify judgment, Kellogg continued to request declaratory relief
under its counterclaim.  Kellogg also sought to recover $500,000 based on the
jury=s answer to
question three.  Nonetheless, the trial court adhered to its original judgment,
which ordered that both Hirschfeld and Kellogg take nothing on all of their
claims.  

In sum, at trial, Hirschfeld sought approximately $2
million in contract damages plus declaratory relief against Kellogg, and
Kellogg asserted a counterclaim for approximately $4 to $5 million plus
declaratory relief against Hirschfeld.  The trial court=s judgment ordered
that both parties take nothing on their claims.  In this context, we conclude
the trial court did not err in determining that neither Hirschfeld nor Kellogg
was a Aprevailing party@ in this
litigation entitled to all of its attorney=s fees under the
Subcontract.  See Western Skies P=ship/Physician=s Healthcare
Assocs., L.C. v. Physician=s Healthcare
Assocs. L.C., No. 08-02-00231-CV, 2004 WL 1078491, at *4 (Tex. App.CEl Paso May 13,
2004, no pet.) (holding in memorandum opinion that trial court did not err in
concluding that, under contractual provisions awarding fees to Aprevailing party@ in the
litigation, no party prevailed because all parties recovered nothing on their
claims and counterclaims).  Accordingly, we overrule Kellogg=s cross-issue.








                                                 V.  Conclusion

Under the unambiguous language of the Subcontract,
performance of the written maintenance plan is not a condition precedent to the
existence of Hirschfeld=s ten-year warranty.  Therefore, the trial
court did not err in dismissing with prejudice Hirschfeld=s declaratory-judgment
claims regarding the ten-year warranty.  Under the applicable standard of
review, there is legally and factually sufficient evidence to support the jury=s finding that
Hirschfeld did not substantially perform its duties under the Subcontract. 
Hirschfeld did not preserve error as to whether the trial court abused its
discretion by admitting allegedly irrelevant testimony regarding Hirschfeld=s suspension of
its ten-year warranty.  Based on the jury=s findings and the
evidence at trial, we conclude the trial court did not err in refusing to
render judgment in favor of Hirschfeld on its claim seeking compensation for
first-year maintenance services.  As to Kellogg=s cross-appeal, we
conclude the trial court did not err in denying Kellogg recovery of all its
attorney=s fees in this
litigation under the Aprevailing party@ provisions in the
Subcontract.  

Having overruled all of the issues raised in the appeal and
cross-appeal, we affirm the trial court=s judgment.

 

 

 

/s/      Kem Thompson Frost

Justice

 

 

 

 

Judgment rendered
and Opinion filed August 15, 2006.

Panel consists of
Justices Fowler, Frost, and Guzman.









[1]  Elsewhere in the Subcontract, the parties used
language creating an express condition precedent.  For example, in section
22(C)(8) of the Subcontract=s Attachment A,
the parties state that A[n]otwithstanding any provision of this Subcontract to
the contrary, it is further expressly agreed that final payment by the [Sports
Authority] to [Kellogg] is an absolute condition precedent to final payment by
[Kellogg] to [Hirschfeld].@





[2]  Kellogg also asserted a no-evidence motion for
summary judgment regarding these claims; however, by concluding the trial court
did not err in granting the traditional motion, we need not analyze this
additional ground for summary judgment.





[3]  Although Kellogg objected that this instruction
failed to specifically state that substantial completion of a project or
building is not necessarily the same as a contractor substantially performing
its responsibilities under the contract, the instruction given was consistent
with Kellogg=s proposed additional instruction.  The trial court
simply declined to give a more specific instruction in this regard.





[4]  As quoted above, sections 4 and 5 of Attachment B of
the Subcontract state that Hirschfeld Ashall
warrant@ for a period of ten years (1) the design of the Roof
System, (2) the interface between the design of the structural roof system and
the roof mechanism, and (3) the design, manufacture, and installation of the
roof mechanism to perform its intended purpose.  In section 20(B) of Attachment
A of the Subcontract, Hirschfeld also agreed to Apromptly make good, without cost to [Kellogg] or [the Sports
Authority], any and all defects due to faulty workmanship and/or materials
which may appear within the guarantee or warranty period(s) established in the
Contract Documents.@





[5]  At trial, Kellogg asserted that any final payment to
Hirschfeld was not due until Kellogg received final payment from the Sports
Authority on April 26, 2002.  Hirschfeld asserted that, under change order 18
to the Subcontract, final payment from Kellogg was due thirty days after Kellogg
issued a final ACertificate for Payment@ following Hirschfeld=s full
performance of the Subcontract (with certain exceptions).  Hirschfeld asserted
that the relevant parts of the Subcontract had been fully performed and that
the Settlement Agreement constituted the final ACertificate for Payment.@ 
Under this theory, final payment, if any, was due thirty days after March 29,
2002, on April 28, 2002.  





[6]  If this work fell under the Subcontract, then
Hirschfeld=s failure to substantially perform the Subcontract
would bar its recovery.  See Dobbins v. Redden, 785 S.W.2d 377, 378
(Tex. 1990).





[7]  Kellogg also relies on another provision of the
Subcontract allowing Kellogg to recover attorney=s fees if it is determined to be the Aprevailing party@ in the litigation; however, the scope of this
provision is not broader than the quoted provision and this clause involves the
same inquiry into whether Kellogg was the Aprevailing
party@ in this litigation.





[8]  Though the parties stipulated as to the aggregate
amount of fees for each side in the litigation, neither party undertook to
segregate fees on a claim-by-claim basis, and neither party has argued that the
Subcontract entitled it to fees as a Aprevailing
party@ on a claim-by-claim basis.





[9]  More than four months before trial, Hirschfeld
dropped from its petition negligence and fraud claims that it had been
asserting.





[10]  Even though the $500,000 found by the jury in question
three is less than the $1,259,922 found by the jury to be unpaid under the
Subcontract, Kellogg sought in the trial court to recover the entire $500,000
under its counterclaim.  The trial court denied this relief, and Kellogg has
not appealed this ruling.